IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DONNA GAIL DAVIS, | § § | |
| Plaintiff, | § § | |
| v. | § § § | C.A. 3:03-CV-0415-R<br>ECF |
| UNITED STATES OF AMERICA, | § § | |
| Defendant. | § § | |

**MEMORANDUM OPINION AND ORDER**

Now before the Court is Defendant United States of America's Motion for Summary Judgment and Brief in Support (Dkt. Nos. 35-37). After carefully considering the motion, Plaintiff's response, the summary judgment evidence, and the applicable law, the Court **DENIES** Defendant's motion in its entirety.

**I. BACKGROUND**

The facts, construed in the light most favorable to Plaintiff, are these. Davis, an inmate in the Federal Medical Center-Carswell, was sexually assaulted by Officer Steven Suarez, a prison guard. Suarez and Davis began an inappropriate relationship after she arrived at Carswell in January 1999. One day in March1999, during the early morning hours, Suarez woke Davis and escorted her to a noise-filled mechanical room. Once there, he closed the door and gave her

1

a choice; she could either have vaginal or oral intercourse with him. Given this choice, she performed oral intercourse on him.

Prior to that early morning assault, Davis had several private meetings with Suarez. In these private meetings, Suarez fondled her breasts, kissed and hugged her, and placed his hand on her vagina. Davis rebuked Suarez's advances on each occasion.

In his pursuit of Davis, Suarez received the assistance of other guards at the prison, specifically Officers Darlene P. Brown and Richard L. Williams. On two separate occasions, much like the morning of the sexual assault, Brown and Williams delivered Davis to Suarez at his request. Both incidents took place in the early morning hours, and on both occasions the officers violated prison regulations by transferring Davis from her unit without permission from the Lieutenant. In early March 1999, Brown responded to a request from Suarez to deliver Davis to his unit. Brown retrieved Davis from her room after the guards had finished the nightly midnight count of prisoners. Brown took her to Suarez in an adjacent unit. Davis was with Suarez for about one hour and thirty minutes. Brown did not monitor the meeting with Davis or report the incident. Also in early March 1999, Williams responded to another request from Suarez. Williams allowed Suarez to enter Davis's unit and room after midnight count, wake Davis, and take her to another unit. Suarez kept Davis for about an hour. Williams did not monitor Davis or make any report of the incident.

Not surprisingly, when Suarez sexually assaulted Davis in the mechanical room in early March, he used the same tactics to get Davis out of her unit. He woke her after the midnight count and escorted her away from her unit. No guard at Carswell reported Suarez's breaches of prison regulations or the unique activities he pursued with Davis after the midnight count.

2

The report of unusual activity instead came on March 10, 1999, from Tavia Crumpler. Crumpler, a corrective therapist, spotted Suarez in the physical therapy area. She asked him what he was doing. Suarez responded that he was "hiding out" in the area during a heavy rain. Crumpler checked outside to see that the weather had cleared and told Suarez that the rain had stopped. Crumpler heard Suarez tell Davis, who was in the area at the time, "Thanks for the company." Then Suarez walked into the hallway and called for Davis. Although Crumpler could not hear their conversation and witnessed no inappropriate touching between Suarez and Davis, Crumpler contacted a BOP investigator to report what she had seen.

Crumpler's report led to an investigation. As a result of the investigation, Officers Brown and Williams resigned from their jobs for violating policy when they transferred Davis to Suarez after the midnight count. Suarez not only resigned his post, he was charged and convicted of sexual abuse of a ward.

## II. DISCUSSION

Summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure is appropriate when there is no genuine issue as to any material fact in the case and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Melton v. Teachers Ins. & Annuity Ass'n of Am.*, 114 F.3d 557, 559 (5th Cir. 1997). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Calbillo v. Cavender Oldsmobile,* 288 F.3d 721, 725

(5th Cir. 2002). The evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 255 (1986).

Davis filed suit against the United States under the Federal Tort Claims Act (FTCA) alleging that several employees of the BOP, in the course and scope of their employment, neglected their duty to either intercede in or simply report their repeated observations of Suarez's inappropriate relationship with Davis.  Davis alleges that the negligence of these BOP employees proximately caused her injuries at the hands of Suarez.  The United States seeks summary judgment on Davis's claims because (1) the selection and supervision of prison employees is a discretionary function exempted from the liability imposed on the federal government by the Tort Claims Act, (2) Suarez was not performing the duties of his employment when he sexually assaulted Davis, and (3) the relationship between Suarez and Davis was secretive and prevented BOP staff from foreseeing Davis's ultimate injury.

Davis argues that summary judgment is inappropriate because BOP employees, acting in furtherance of their job duties, negligently facilitated Suarez's meetings with Davis and failed to report his unusual relationship with her, making the sexual assault foreseeable.  Davis does not claim that the United States' liability rests on the intentional tort committed by Suarez, but on the negligence of employees who could have foreseen that their actions proximately caused the ultimate assault.

### A.     The Federal Tort Claims Act

Generally, the United States is immune from suit.  But the FTCA carves out particular circumstances in which the United States waives its immunity.  One instance in which the United States waives immunity is when a person brings a negligence action against the

4

government based on acts or omissions of its employees while the employees are acting within the scope of their offices or employment. 28 U.S.C. § 1346(b). On the other hand, the FTCA does not waive governmental immunity for intentional acts committed by its employees. 28 U.S.C. § 2680(h).

When determining liability under the FTCA, the courts must apply state substantive law. 28 U.S.C. § 1346(b); *Garcia v. United States,* 62 F.3d 126, 127 (5th Cir. 1995). Therefore, this Court reviews Davis's claims against the United States according to Texas tort law, deciding whether Davis has sufficiently demonstrated a genuine issue of material fact that (1) BOP employees were negligent, (2) in the scope of their employment, and (3) the negligent acts proximately caused Davis's injury.

      **B.**     **Officers Brown and Williams were acting in the course of their employment with the BOP.**

Employees act in the course and scope of their employment if their actions are (1) within the general authority given to them, (2) in the furtherance of the employer's business, and (3) for the accomplishment of the object for which the employees were employed. *Green v. Ransor, Inc.,* 175 S.W.3d 513, 516 (Tex. App. – Fort Worth 2005, no writ). However, when an employee turns away from the advancement of the employer's work to engage in wholly personal pursuits, the employee is no longer acting on behalf of the employer in the scope of employment. *Mackey v. U.P. Enters., Inc.,* 935 S.W.2d 446, 453 (Tex. App. – Tyler 1996, no writ).

Therefore, when a prison guard turns from the duties of the job to violate BOP policy and the law by intentionally raping an inmate, the government is not liable for his intentional, criminal actions. *See Shirley v. United States,* 2006 WL 708651, *3 (N.D. Tex. 2006). But

5

when one government employee's negligence allows another government employee to commit an intentional tort, the courts have found liability not for the intentional tort, but for the negligence that precipitated the intentional tort. *Downey v. Denton County,* 119 F.3d 381, 387 (5th Cir. 1997) (upholding liability of government when a guard escorted a prisoner to a room and left her there with a male guard for one hour and 45 minutes and the inmate was raped as a result); *see also Quinn v. Mem'l Med. Ctr.,* 764 S.W.2d 915, 917-18 (Tex. App. – Corpus Christi 1989, no writ) (overturning summary judgment against plaintiff injured by doctor's administration of abortion drug where government pharmacist dispensed abortion drug to doctor even though doctor did not give the name of the patient and doctor was not allowed to write prescriptions beyond those for patients in that particular hospital).

    Davis does not bring her suit alleging governmental liability for the intentional actions of Suarez. Instead, Davis alleges that Officers Brown and Williams, acting in the scope of their employment with the BOP, proximately caused her injuries. Brown and Williams did not venture from their job duties for their own personal pursuits when they, on Suarez's request, escorted Davis to Suarez's unit. They were acting as prison guards, doing what prison guards often do. Escorting prisoners from one unit to another was an integral part of their daily duties. Further, Brown and Williams's job duties require them to "report any violation, or apparent violation, of standards of conduct to their Chief Executive Officer (CEO) or another appropriate authority." Standards of Employee Conduct, Publication of the U.S. Department of Justice, Federal Bureau of Prison (Feb. 5, 1999). The duty to report, under these guidelines, is not a discretionary job function; it is a mandatory requirement. Therefore, Davis has presented a genuine issue of material fact that Brown and Williams were acting, without discretion, in the scope of their employment when they led Davis to Suarez at his request.

### D.      **Brown and Williams were negligent in the performance of their job duties.**

In order to prevail on her claims against the government, Davis must establish the existence of a duty, a breach of the duty, and that her damages were proximately caused by the breach. *Western Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex. 2005).

The BOP has a duty to provide those in its custody with suitable quarters; provide for their safekeeping, care, and subsistence; and provide for their protection, instruction and discipline. 18 U.S.C. § 4042. Further, Carswell had its own Post Order that prohibited the transfer of an inmate between the hours of 12:00 a.m. and 6:00 a.m. without approval from the Lieutenant – "At no time before 6:00 A.M. will inmates be allowed to exit the unit without the authorization of the lieutenant and without staff escort."

Davis has sufficiently presented a genuine issue of material fact regarding the existence of and the government's breach of a duty. By transferring Davis to another unit after midnight, at Suarez's request, and then failing to report these after-midnight liaisons, Brown and Williams violated prison policy and a duty they owed Davis to provide for her safekeeping and protection.

### E.      **Brown and Williams's negligent acts proximately caused Davis's injury.**

To establish proximate cause, a plaintiff must prove two elements: cause in fact and foreseeability. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 549 (Tex. 1985). Cause in fact means that the negligent act or omission was a substantial factor in bringing about the injury. *Id.* And foreseeability means that a person of ordinary intelligence should have anticipated the danger created by his or her negligent act or failure to act. *Id.* at 549-50. Further, the negligence

of the first actor is not excused simply because some third party intervened and committed an intentional tort if the third party's act should have been foreseen. *Id.* at 550.

For example, in a case cited by Davis, after finding out that he had impregnated his girlfriend, the plaintiff's boyfriend-doctor injured her by giving her medication intended to cause an abortion. *Quinn,* 764 S.W.2d at 916. Dr. De Pena, a resident-in-training, phoned the pharmacist at the hospital inquiring about the availability of an abortion hormone. After being informed that the pharmacy did have the hormone in stock, De Pena wrote a prescription for the hormone. He did not write the patient's name on the prescription. When the pharmacist questioned him about the deficiency on the prescription – a violation of the hospital rules – De Pena said he would settle up later. De Pena paid for the hormone and, at his girlfriend's apartment, administered the hormone to her. The next day, De Pena's girlfriend was admitted to the hospital for hemorrhaging. *Id.*

The Court of Appeals addressed the issue of whether the pharmacist's dispensing the hormone to De Pena proximately caused the plaintiff's injuries. *Id.* at 918. The court found that the plaintiff presented a genuine issue of material fact as to causation. Residents-in-training were not allowed to write prescriptions for anyone but themselves or their patients in the hospital. De Pena was a male, so the hormone could not have been for his use. De Pena violated hospital rules by not providing a patient's name, and the pharmacist did not inquire about whether this hormone was prescribed for a patient in the hospital. On these facts the court concluded that the pharmacist should have foreseen that the kind of injury plaintiff suffered would result from the failure to take reasonable precautions when dispensing the hormone. And although De Pena's intentional act was also responsible for the plaintiff's injury, the negligence of the pharmacist was actionable under the Texas Tort Claims Act. *Id.*

8

Likewise, in assessing foreseeability under Texas tort law, the Fifth Circuit concluded that a female guard who gave a male guard access to an inmate could have foreseen that her actions might create a situation in which the male guard might avail himself of the opportunity to intentionally rape the inmate. *Downey v. Denton County,* 119 F.3d at 389. The court pointed out that the plaintiff was not suing Denton County for the intentional act of the guard who raped her. Instead she sued Denton County for the negligence of the guard who created the dangerous environment or opportunity. *Id.* at 387. The court found liability where a male guard went to the women's unit requesting that a female inmate mend a tear in his pants. Although it was against jail policy to leave a female inmate alone with a male guard, a guard in the women's unit escorted the plaintiff to a multi-purpose room and left the plaintiff in the room alone with the male guard without monitoring them for one hour and 45 minutes. During that time, the male guard sexually assaulted the plaintiff. *Id.* at 383. On facts eerily similar to the facts of Davis's case, the Fifth Circuit found that the guard in the women's unit "should have realized the likelihood that a situation was created wherein [the male guard] could avail himself of the opportunity to injure or harm [the plaintiff]." *Id.* at 389.

Like the pharmacist in *Quinn* and the female guard in *Downey*, Brown and Williams should have realized the likelihood that their breach of prison regulations – escorting Davis to another unit after midnight and failing to report Suarez's after-midnight activities with Davis – would create a situation where Suarez "could avail himself of the opportunity to injure" Davis. *See id.* First, Brown and Williams violated a regulation meant to protect inmates from the very kind of harm Davis suffered. Second, the circumstances of Suarez's requests for Davis should have raised red flags. He requested that Brown and Williams conspire with him to violate prison

9

regulations so that he, as a male guard, could have unsupervised access to a female prisoner, in the early morning hours, after she had been sleeping, and while she was still in her pajamas.

Contrast Brown and Williams's behavior with the reaction of Tavia Crumpler, the therapist that saw Suarez interact with Davis during the day-time hours. Crumpler witnessed nothing sexual between Suarez and Davis. In fact, she did not see or participate in any violations of prison policies. She only saw a male guard who was out of place, during the day, speaking to a couple of female inmates, and then singling out Davis for a brief conversation in the hall. But Crumpler's reaction to that brief interaction was what ultimately saved Davis from further abuse. Instead of furthering Suarez's opportunity to be alone with Davis, Crumpler reported the "suspicious" activity she had witnessed. That report led to the investigation and eventually resulted in the discovery of the sexual assault and the staff's participation in it; the resignations of Brown, Williams, and Suarez; and the criminal prosecution of Suarez.

Crumpler's reaction serves as perhaps the best evidence of foreseeability. If Crumpler could foresee the danger posed by Suarez's "suspicious" behavior around Davis, certainly Brown and Williams could have foreseen that giving Suarez unmonitored access to a female prisoner, in violation of prison regulations, after midnight, while in her pajamas, and then not reporting the suspicious activity or the violation of the prison rules, could lead to her injury at the hands of Suarez.

### III. CONCLUSION

Because Davis has presented a genuine issue of material fact that (1) Brown and Williams were working in the scope of their employment, (2) when they violated a duty to

10

protect Davis from harm, and (3) their violations proximately caused Davis's injury, the Court must DENY the United States' motion for summary judgment.

**IT IS SO ORDERED**

**ENTERED: February 16, 2007**

_____
**HON. JERRY BUCHMEYER
SENIOR UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS**

11